[Civ. No. 63219. Second Dist, Div. Five. Oct. 21, 1982.]

LOUIS M. FOUT, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD et al., Defendants and Appellants.

818

**COUNSEL**

George Deukmejian, Attorney General, and Martin H. Milas, Deputy Attorney General, for Defendants and Appellants.

Irving S. Feffer for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Defendants, State Personnel Board and California Highway Patrol (CHP), appeal from a judgment ordering the issuance of a peremptory writ of mandate and remanding the case back to the State Personnel Board for the sole purpose of reconsidering the penalty of dismissal.

Plaintiff Louis Fout has been employed by the California Highway Patrol as a state traffic officer since 1966. In December 1979, he was served with a notice of punitive action charging that the alleged acts of misconduct hereafter described constituted grounds for dismissal under the following subdivisions of Government Code section 19572:[1] insubordination (e), immorality (*l*), and failure of good behavior either during or outside of duty hours of such a nature that it caused discredit to his agency (t).

Plaintiff was terminated from his employment on December 27, 1979. He appealed to the State Personnel Board, which, after a hearing, denied the appeal.

The hearing officer made written findings among which the following are relevant:

"III [¶] [Fout] was dismissed from his position as a State Traffic Officer upon allegations that he had inappropriate contact of a sexual nature with two girls and that he had, thereafter, refused to answer questions placed to him by his commanding officer about the allegations made.

"IV [¶] During the period of some seven or eight years prior to November of 1978 [Fout] had a close and intimate relationship with a divorced lady. The lady had a daughter, who had been born on October 21, 1961.

"V [¶] During the Easter period in April 1978 [Fout] was in the lady's home at the time when only he and the lady's daughter were there. [Fout] approached the daughter and asked, 'May I please have a feel.' The daughter refused and went to her bedroom where [Fout] again

---

[1]Goverment Code section 19572 provides in pertinent part: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: . . .

"(e) Insubordination . . . .

"(*l*) Immorality . . . .

"(t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

appeared and apologized but replaced the original question. [Fout] then touched the daughter's breast through her clothing with a very quick touch. This conduct was neither invited nor permitted by the young lady.

"VI [¶] In February of 1979 [Fout] again came to the lady's home at a time when she was not present and the daughter was alone in the house. At that time [Fout] placed his hands on the young lady's breasts and opened a wrap-around skirt and placed his mouth on the young lady's vagina. This conduct was neither invited not permitted by the young lady.

"VII [¶] In March of 1977 one of the daughter's girlfriends, who had been born on October 5, 1962 approached [Fout] seeking a loan. The negotiations took place in the home of the lady when only the girlfriend and [Fout] were present. After the business transaction had been completed [Fout] asked the young lady if she would go upstairs and 'feel him'. [Fout] touched her breast at this time with his hand. This conduct was neither invited nor permitted.

"IX [¶] . . . On November 2, 1979 after having given appropriate notices and information to [Fout], the captain asked a series of questions about the alleged events. [Fout] refused to respond to the questions and based his refusal upon constitutional safe guards.

"A second interrogation was conducted on November 7, 1979 in the presence of [Fout's] attorney. After the appropriate information and advice had been communicated or its repetition had been waived the same series of questions was asked and [Fout] again refused to respond. [Fout's] refusal was based upon constitutional protections."

Based upon the foregoing findings, the hearing officer concluded that plaintiff's conduct with the two girls constituted immorality and a failure of good behavior of such a nature as to cause discredit to his agency and his employment within the meaning of Government Code section. 19572, subdivisions (*l*) and (t); and his refusal to answer the questions of his commanding officer constituted insubordination within the meaning of subdivision (e). Accordingly, the hearing officer determined that the punitive action of dismissal be sustained. The board adopted the hearing officer's findings and decision and upheld the dismissal of plaintiff Fout.

Plaintiff then filed the petition for writ of mandate to compel the board and CHP to set aside their decisions terminating his employment. The superior court thereafter ordered the issuance of a peremptory writ of mandate and remanded the case back to the board for the sole purpose of reconsidering the penalty.

The board and CHP now contend that the trial court erred by substituting its discretion for that of the employer and the State Personnel Board. We agree.

It is well settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its decision will not be disturbed unless there has been an abuse of discretion. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 553 [102 Cal.Rptr. 50].) Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. (*Barber* v. *State Personnel Bd.*, *supra*.) In considering whether an abuse of discretion occurred in the discipline of a public employee, the overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service. Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. (*Warren* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 95, 107-108 [156 Cal.Rptr. 351].)

Fout's dismissal stems from child molestation activities involving two teenage girls and the refusal on two occasions to cooperate in an investigation of the molestation charges.

Child molestation, which involves moral turpitude and is, accordingly, immorality within the meaning of Goverment Code section 19572, subdivision (*l*), is a particularly serious offense when committed by a peace officer. As an officer of the CHP, Fout is likely to come into contact with teenage girls while on the road alone, and the CHP must have total confidence in the behavior of their officers. Not only does the child molestation discredit Fout, but it discredits the entire agency. The CHP, as a law enforcement agency charged with the public safety and welfare, must be above reproach.

Additionally, this is not the type of misconduct that might very well be corrected with a lesser form of discipline such as a suspension or demotion. (Cf. *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217-218 [124 Cal.Rptr. 14, 539 P.2d 774].) The likelihood of its recurrence always exists, especially since in this case, it had already happened on more than one occasion with more than one young girl.

As the court said in *Warrren* v. *State Personnel Bd.*, *supra*, 94 Cal.App.3d 95, 106, "A law enforcement agency cannot permit its officers to engage in off-duty conduct which entangles the officer with lawbreakers

and gives tacit approval to their activities. Such off-duty activity casts discredit upon the officer, the agency and law enforcement in general."

Here, Fout wilfully made sexual advances, including cunnilingus on one occasion, upon two teenaged girls against their will.

A third basis for Fout's termination stems from insubordination by refusing to cooperate during the investigation. In view of the seriousness of the charges against him and the importance of the investigation to resolve those charges, Fout's refusal to cooperate with the investigation could only result in serious harm to his public service. (See *Kelly* v. *State Personnel Bd.* (1979) 94 Cal.App.3d 905, 917 [156 Cal.Rptr. 795].) Under the circumstances, we are unable to conclude that it was an abuse of discretion to terminate Fout's employment. "The fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion. [Citation.]" (*Stanton* v. *State Personnel Bd.* (1980) 105 Cal.App.3d 729, 744 [164 Cal.Rptr. 557]

The judgment of the superior court ordering the issuance of the peremptory writ of mandamus is reversed and the decision of the State Personnel Board dated June 5, 1980, is reinstated.

Feinerman, P. J., and Ashby, J., concurred.